STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of
 Michael Gilberg, Ellen Gilberg,
  Patricia Tierney, John Scott,          Docket No. 179-10-99 Vtec
  Louis Beaudette and Cynthia Beaudette

## Decision and Order on Motion for Judgment as a Matter of Law

Appellants appealed from a decision of the Zoning Board of Adjustment (ZBA) of the Town of Wilmington granting a conditional use permit amendment to Appellee-Applicant Green Meadow Center, LLC . Appellants are represented by Robin Stern, Esq.; Appellee-Applicant is represented by Richard D. Perra, Esq.; and the Town is represented by Richard M. Gale, Esq.  Appellants have moved for judgment as a matter of law.

The following facts are undisputed unless otherwise noted.

The property at issue is a forty acre parcel of land containing a dairy farmstead with buildings constructed from 1885 through some time in the 1940s or 1950s.  Whether all the buildings were constructed before the adoption of zoning in Wilmington in 1968 is a material fact not supplied by the parties in their materials, although it may not actually be disputed.  The property was in use for community movies and square dances, and was operated as a ski lodge and a night club, but the dates of these uses also have not been supplied.  Without this information, and without the 1968 version of the Zoning Ordinance, the Court cannot determine whether the use of the property or the location of the buildings or number of buildings qualified as pre-existing, non-conforming uses as of the date of adoption of the zoning ordinance.

The property was acquired and renovated for use as a school in 1971 by the Palisades School, Inc., under a so-called "Special Use[1]" permit as a "group service use:

---

[1] The application requested a "special use" permit and was on a form entitled "application for special use or variance."  Only in the ZBA's record of its vote was the

1

private school and day camp" under §7(A)(1), (4), and (9) of the Wilmington Zoning Ordinance. The parties have not supplied the version of the Zoning Ordinance in effect in 1971, from which the Court could determine the nature of a "special use" permit. It appears that the "special use" permit may have been distinct from a "variance," and may have been the equivalent of a conditional use permit, but the Court cannot make that determination on the present evidence. The permit was not appealed and became final. Various improvements to the property, including a new septic system, received additional permits and were built between 1971 and 1985.

The property was operated as a school from 1971 through some time in approximately the summer of 1997, first by the Palisades School, Inc., and from 1976 by Green Meadows School, Inc. The date of cessation of active use of the property as a school has not been provided to the Court. A ten-acre parcel of land was sold by the owner to Appellants Tierney and Scott in December 1997. The subdivision line for this sale placed three of the school buildings, respectively, 22 feet, 22 feet, and 24 feet from the property line. The side line setback is 20 feet in the Residential zoning district. Unlike some zoning ordinances, the Wilmington zoning ordinance does not provide for an increased setback for commercial uses in a residential district, although such requirements may be imposed as conditions in a conditional use permit.

A conditional use permit was issued on July 13, 1998 to the property owner, on behalf of Appellee-Applicant (the prospective buyer) for a change in use/conditional use permit to operate a 'community center' on the property in lieu of the residential school. The permit was not appealed and became final. Conditions of the permit included a requirement that only the Phoenix building (also known as the 'large barn') was approved, and only for the five uses then proposed by Appellee-Applicant: 1) Day care and essential early education; 2) Dance classes; 3) Office space; 4) Two staff members providing 'assistance to families with special needs'; and 5) Aerobics classes, each with specified hours. It provided that any modifications to the permit would require 'further application to

application referred to as a "variance."

2

the Board.'

The 1998 Conditional Use Permit expired by its terms one year from the date of issue, but also provided that a request for extension could be made before the expiration date and would become part of the permit upon approval by the Board. As no appeal was filed of the 1998 Condition Use Permit, including no appeal of its extension provision, that permit became final and neither it nor its extension provision can now be challenged, even if such an extension provision was unauthorized when adopted. 24 V.S.A. 4472. An extension was granted under that provision on June 21, 1999, without notice to adjoining property owners. The minutes of the June 21, 1999 action of the Board was not provided to the Court; we cannot determine the length of time for which the extension was granted.

The project therefore holds the 1998 Conditional Use permit and is entitled to undertake the project according to that permit, regardless of the status of the 1999 Amendment at issue in the present appeal, and regardless of whether the uses authorized by that permit should have been allowed in the district.

On July 8, 1999, still before the original expiration date of the 1998 Conditional Use Permit, Appellee-Applicant applied for an amendment to the 1998 Conditional Use Permit, seeking to expand the uses to five other buildings, to expand the parking areas, and to expand the uses to include a once-a-week medical clinic, after school activities, a computer lab, a dining area/kitchen, a 6-unit senior citizen residence, a 6-bedroom dorm for program participants, agricultural activities and an outdoor play area. This permit was granted and is here on appeal.

Appellants argue that the project is not a use eligible for a conditional use permit and that several of the proposed uses are not themselves allowed as conditional uses in the Residential districts.

The Zoning Ordinance defines "group service" as "a service which is customarily performed or provided for a number of persons at the same time or which customarily involves the participation or presence of a number of persons as opposed, for example, to the customary services provided or performed on an individual basis by the doctor or repairman." It defines "group services uses" as "any use of land or buildings for the

3

purpose of providing, performing or selling a group service." Reading these definitions together, it is apparent that a group service may be provided on either a for-profit or a non-profit basis.

Wilmington has only two zoning districts: Residential and Commercial. In the Residential districts, only agriculture, single and double family dwellings, home occupations, and accessory uses are allowed as permitted uses. Conditional uses allowed in the Residential districts are professional offices, motels and other lodging establishments, and accessory uses. Conditional uses allowed in either district include multiple family dwellings, cluster housing, children's camp, and dumps and junkyards, as well as the category at issue in the present case. That category is presented in the ordinance as follows:

A. Conditional Uses Permitted in Either District Are:

1. Group service uses.
   (a) Churches, parish houses and community or fraternal structures.
   (b) Golf courses, tennis courts, water impoundments, swimming pools and similar recreational, participating athletic facilities, even though operated commercially.

If all group service uses were allowed as conditional uses in either district, it would have been unnecessary for the ordinance to have specified these two subcategories of group service uses. Because they were specified, the group service uses allowed in the Residential district as a conditional use are only those which fall into the two subcategories. Subcategory (a) includes only non-profit uses, while subcategory (b) specifically allows commercially operated recreational facilities. Therefore the proposed amendment does not fall within the specified subcategories.

However, it appears from the history of this facility that it was a pre-existing non-conforming use, operated under some sort of 'special use' permit. Section 7(D) of the Zoning Ordinance allows a change from one non-conforming use to another, following the conditional use procedure. This may have been the underlying rationale for the 1998 Conditional Use Permit, and would support an amendment to the permit. Accordingly, if

4

the requisite material facts can be established for the project to fall within this category of the Ordinance, we will proceed to consider the proposed amendments on their merits under §7(D).

Material facts are in dispute as to Appellants' remaining arguments: that the project does not meet the conditional use standards at least as to the character of the area and as to traffic; that approval should not have been granted without a condition establishing the entity responsible for owning or managing the project, and that setbacks greater than those required in the residential zone should have been imposed as a condition. Those issues will be addressed after evidence is presented in the hearing on the merits.

Accordingly, based on the foregoing, Appellants' Motion for Judgment as a Matter of Law is GRANTED as to the eligibility of the project within the §7(A)(1) subcategories of group service uses. It is otherwise DENIED; the remaining issues require an evidentiary hearing. The court will hold a telephone conference on December 7, 2000 to determine the scheduling of such a hearing, any further discovery, and any additional motions.

Done at Barre, Vermont, this 27th day of November, 2000.

_____
Merideth Wright
Environmental Judge

5